762 So.2d 106 (2000)
STATE of Louisiana
v.
Jimmy BAZILE.
No. 99-KA-2011.
Court of Appeal of Louisiana, Fourth Circuit.
April 26, 2000.
*107 Harry F. Connick, District Attorney, Jane L. Beebe, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff-Appellee.
Laura Pavy, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant-Appellant.
(Court composed of Chief Judge ROBERT J. KLEES, Judge WILLIAM H. BYRNES, III, Judge MICHAEL E. KIRBY).
BYRNES, Judge.
Jimmy Bazile was charged by bill of information on March 19, 1998, with burglary of an inhabited dwelling, a violation of La. R.S. 14:62.2. At his arraignment on March 24th he pleaded not guilty. The trial court found probable cause and denied the motion to suppress the evidence on May 1, 1998. After trial on November 18th a twelve-member jury found him guilty as charged. The State filed a multiple bill, and, after a hearing, the defendant was sentenced on April 14, 1999, to life imprisonment as a fourth felony offender without benefit of parole, probation, or suspension of sentence under La. R.S. 15:592.1. The defendant's motion to reconsider the sentence was denied, and his motion for an appeal was granted.
Officer Thomas Keelan testified that on March 4, 1998, he received a call concerning a burglary in progress at 4117 North Johnson Street. The officer accompanied by several other policemen arrived at the house, and Officer Keelan went around to the back yard. There he saw a man wearing gloves and carrying a backpack walk out of the back door of the house. The man was stopped, and his backpack was searched. Two television remote control devices were in the backpack, and three screwdrivers were in his pocket. Inside the house, the officer found a television and VCR wrapped in a blanket in the middle of the floor in one of the rooms. The man, later identified as Jimmy Bazile, was arrested.
Officer Dan Anderson also answered the burglary call on North Johnson Street. He waited at the front door while Officer Keelan went into the backyard. Officer *108 Anderson said that shortly after he arrived, the front door of the house opened and a man started outside. When he saw the police officer, he turned and went back into the house. Shortly thereafter, the officer heard that Officer Keelan had arrested the man in the backyard.
Mr. Alfred Carlin, the resident at 4117 Johnson Street, testified that he left his home early in the morning on March 4, 1998, to go to work, and when he received a call that his home had been burglarized, he returned there immediately. He found that someone had broken into his house through a kitchen window that was forced open. The lower half of the window was protected by burglar bars; however, the top half of the window had been opened. A window in the back washroom had been tampered with, but it was not opened. Mr. Carlin found his television and VCR wrapped in a blanket near the back door. He identified the two remote control devices found in the defendant's backpack as his. Mr. Carlin testified that he did not know the defendant and had not given him permission to enter the house. When Mr. Carlin left his home that morning, all the doors and windows were closed and locked.
Through counsel, the defendant first argues an error patent in sentencing in that the sentencing transcript does not indicate that he received credit for time served. La.C.Cr.P. art. 880 provides that "[a] defendant shall receive credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence." However, the article was amended in 1997 to make credit for prior custody self-operating in the case of a silent record. Acts 1997, No. 788, § 1. Therefore, the statute does not require court action. State v. Ignot, 29,745 (La.App.2d Cir.9/24/97), 701 So.2d 1001, writ denied, 99-0336 (La.6/18/99), 745 So.2d 618.
In the first assignment of error, the defendant pro se and through counsel maintains that the evidence was insufficient to support his conviction as a fourth felony offender.
The first issue that must be resolved is whether the defendant has preserved this issue for appellate review. In State v. Cossee, 95-2218 (La.App. 4 Cir. 7/24/96), 678 So.2d 72, this Court held that the failure to file a written response to the multiple bill as required by La. R.S. 15:529.1 D(1)(b) precluded appellate review of the defendant's claim that the documentary evidence was not sufficient to support the prior convictions set forth in the multiple bill.
When the record does not contain the defendant's written response to the multiple bill, the issue will not be preserved for appellate review unless the objection is made orally. State v. Anderson, 97-2587 (La.App. 4th Cir. 11/18/98), 728 So.2d 14. At the multiple bill hearing, defense counsel made a general objection to the sufficiency of the evidence in the 1989 and 1975 convictions. Thus, we conclude that defense counsel did preserve the issue for appellate review, as this is the basis for the defendant's argument before this Court. Accordingly, the merits of this issue will be considered.
The multiple bill of information was based on a 1994 possession of stolen property conviction, (case # 366-840), a 1989 simple burglary conviction, (case # 328-250), and a 1975 simple robbery conviction, (case # 73-1299, 24th JDC). At the multiple bill hearing, Officer Glen Burmaster, an expert in fingerprint identification, testified that the fingerprints of the defendant taken in court that day matched those submitted by the State in all three cases. However, he noted that in cases # 366-840 and 328-250 there were complete sets of fingerprints, and in case # 73-1299, 24th JDC there was only one fingerprint.
In arguing insufficiency, the defense concedes that the evidence submitted by the State is sufficient in the 1994 possession of stolen property conviction. However, the defendant argues that the evidence *109 submitted is insufficient in the other two convictions.
As to the 1989 conviction for simple burglary, the defendant argues that the fingerprint evidence is on the back of one of two arrest registers rather than on the bill of information, that the guilty plea form was not made part of the record for appellate review, that the trial court failed to take notice that a knowing and intelligent guilty plea had occurred, and that the prosecution failed to state for the record the crime to which the defendant pleaded guilty.
At the multiple bill hearing on April 14, 1999, Officer Glen Burmaster, an expert in identification of fingerprints, examined the evidence submitted by the State. He found that the fingerprints on the arrest register taken when the defendant was convicted in 1989 matched the fingerprints of the defendant taken in court that day. The defendant contends that the fingerprints should be on the back of the bill of information; however, this Court has affirmed multiple offender status where the fingerprints were on the back of an arrest register rather than on the bill of information. State v. Thompson, 539 So.2d 1008 (La.App. 4th Cir.1989). Furthermore, the State introduced the bill of information, the guilty plea form, the docket master, the minute entry, and an arrest register. The defense concedes that the defendant's name, the dates, item numbers and arrest numbers on the documents match. Accordingly, we find that the record indicates the evidence was sufficient to establish the defendant's identity. State v. Henry, (La.App. 4 Cir. 3/11/98), 709 So.2d 322.
The defendant next complains that the guilty plea form was not made part of the record for appellate review and that the trial court failed to take notice that a knowing and intelligent guilty plea had occurred. However, at trial there was no objection to the guilty plea nor did the defendant produce any affirmative evidence to indicate that he was not properly Boykinized. Therefore, this issue has not been preserved for review. La.C.Cr.P. art. 841.
The defendant next argues that the prosecution failed to state for the record the crime to which the defendant pleaded guilty in the 1989 conviction. However, the multiple bill indicates that the crime was simple burglary. Furthermore, the arrest register attests to the type of crime, the arrestee, and time and place it occurred.
There is no merit in these arguments concerning the 1989 conviction.
As to the 1975 conviction, at the multiple bill hearing, the officer testified that only one fingerprint was taken in 1975, and it matched the corresponding fingerprint taken in court that day. A bill of information packet from Jefferson Parish was introduced, and Officer Burmaster noted that the defendant's name and birth date from the Jefferson Parish conviction matched that information on the other documents introduced. The trial court then accepted the information and found the defendant to be a fourth felony offender.
The defendant's identity in the 1975 conviction was proved by comparing a fingerprint from that case with an identical fingerprint taken the day of the multiple bill hearing and from the documents which showed that the defendant's name and date of birth were identical. There was no objection to the State's documentation. Accordingly, this issue has not been preserved for review. La.C.Cr.P. art. 841
There is no merit in this assignment of error.
In a second assignment, defendant pro se and through counsel contends that the trial court erred in imposing an excessive sentence.
Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). A *110 sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless and needless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Lobato, 603 So.2d 739 (La.1992); State v. Telsee, 425 So.2d 1251 (La.1983).
The defendant maintains that under State v. Dorthey, 623 So.2d 1276 (La.1993), the mandatory life sentence should be deemed excessive considering the trial court's comments at sentencing. Before pronouncing the sentence, the trial court stated:
Mr. Bazile, regrettably I am doing this two days in a row and it is not something I necessarily I[sic] want to do. I got your letter and I probably agree with more in your letter than you realize. This has been a very painful experience for me the whole week. I am not really sure that imposing a life sentence on somebody like you does anything except keep a lot of folks falsely pleased with themselves. I do not have a choice under the law. It is mandated that I have to impose a life sentence on you at this time without benefit of probation, parole, or suspension of sentence.
In his statement the judge referred to a letter the defendant wrote in which he said that his addiction to drugs caused his criminal behavior. The fifty-year-old defendant sent the judge his medical records to support his claim that he is in bad health, suffering from heart and liver conditions as well as seizures. He acknowledged that he should be punished for his conduct but asked that he not be forced to spend the last stage of his life in prison. He copied articles from the La. Code of Criminal Procedure that he thought permitted the judge to suspend his sentence and sent them with the letter.
Under La. R.S. 15:529.1 A(1)(c)(ii), the defendant is subject to a mandatory life sentence as a fourth felony offender.[1] The penalties provided by La. R.S. 15:529.1 are not unconstitutional on their face and do not provide grounds for quashing a multiple bill. State v. Pollard, 644 So.2d 370 (La.1994). The trial court has the authority to reduce the mandatory minimum sentence provided by the statute for a particular offense and offender when such a term would violate the defendant's constitutional protection against excessive punishment. See Id. However, since statutory minimum sentences are presumed constitutional, a trial court may so reduce a sentence only if there is substantial evidence to rebut the presumption of constitutionality, State v. Young, (La.App. 4th Cir. 10/26/95), 663 So.2d 525, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223.
In this case while the trial court's statement indicates vexation with the mandated sentence for this and another defendant, there is no evidence that the judge did not realize that he could deviate from the life sentence if the defendant fit the criteria the jurisprudence has set out. In State v. Johnson, (La.3/4/98), 709 So.2d 672, the Supreme Court declared that a defendant who distinguished himself as an exception could thereby rebut the presumption that the mandatory sentence is constitutional. However, in this case the defendant had at least two convictions that were not considered in the multiple bill,[2] and although the judge expressed sympathy for the defendant, the judge knew that *111 the defendant's age, addiction, and poor health are not criteria for a lesser sentence under State v. Johnson.[3]
The trial judge did not err in imposing the mandatory life sentence. The trial judge's statement that he "did not have a choice under the law" was made in the face of the defendant's record and the fact that he could not offer any mitigating factors for a lesser sentence. This defendant offered no evidence to distinguish himself as an exception and thereby rebut the presumption that the mandatory minimum sentence is constitutional. State v. Johnson, (La.3/4/98), 709 So.2d 672 (La.1998); State v. Francis, (La.App. 4 Cir. 4/15/98), 715 So.2d 457, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741.
In State v. Burns, (La. 4th Cir. 11/10/98), 723 So.2d 1013, writ denied, 98-3054 (La.4/1/99), 741 So.2d 1282, the defendant's life sentence as a fourth felony offender was vacated because this Court was unable to conclude that the life sentence was not constitutionally excessive as applied to the twenty-five year old defendant whose supportive family and non-violent history were mitigating factors.
In State v. Finch, (La.App. 4 Cir. 2/24/99), 730 So.2d 1020, (Judge Jones dissenting), this Court declined to extend Burns to a case where the record was devoid of any testimony suggesting that the twenty-three year old defendant might possess any redeeming virtues. In concluding that his life sentence was not excessive, this Court reasoned:
Where a minimum sentence does not transcend constitutional limits, it may not be reformed by this Court merely because it seems harsh. This Court does not have the authority to second guess the legislature concerning the wisdom of minimum sentencing on any ground other than that of constitutional excessiveness.
Finch, 730 So.2d at 1027.
In the case at bar, the defendant's record includes violent crimes, and there was no testimony to distinguish him or to suggest that his case is the rare exception in which the trial judge should depart downward from the minimum sentence. When the minimum sentence does not exceed constitutional limits, this Court may not reform it simply because it is harsh.
Accordingly, there is no merit in this assignment.
In his third assignment of error the defendant, pro se, argues that the trial court was not informed of its sentencing discretion when imposing a life sentence upon the defendant. Because this issue is argued in the fourth assignment also, it will be considered there.
In his fourth assignment of error, the defendant argues that counsel rendered ineffective assistance at sentencing for 1) failure to make specific error objections at the multiple bill hearing; 2) failure to inform the judge that he could have imposed a lesser sentence; and 3) failure to challenge the oral multiple bill filed in this case.
A defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, 466 U.S. at 686, 104 S.Ct. at *112 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4th Cir.1992).
In the instant case, after sentencing, defense counsel began to make an objection and then withdrew the comment, saying, "I have no legal basis for the argument." The defendant maintains that counsel should have made a specific objection to the insufficiency of the evidence based on Shelton so that the State would have been required to produce certified convictions. However, the fingerprint expert established the defendant's identity as the perpetrator of the three prior offenses, and the State produced packets from each conviction with proof of the defendant's arrest and conviction. The defendant does not suggest what other specific objections counsel should have made, and he does not deny any of the convictions. Thus, he does not prove that counsel made any errors.
The defendant next argues that the attorney should have informed the judge that a lesser sentence could have been imposed. Here the defendant presumes that the judge is unaware of the jurisprudence of the last seven years, and the attorney should have instructed him. However, even if the attorney had asked for consideration under State v. Dorthey, 623 So.2d 1276 (La.1993), the defendant's record would have precluded any lesser sentence. Hence, there is no prejudice or error here.
The defendant complains that the multiple bill was oral; however, the Habitual Offender Bill of Information is included in the record.
Accordingly, there is no merit in the defendant's complaints regarding ineffective assistance of counsel.
For the forgoing reasons the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] La. R.S. 15:529.1 A(1)(c)(ii) provides "[i]f the fourth or subsequent felony or any of the prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) ... the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence." Simple robbery is listed under La. R.S. 14:13(y).
[2] When the defendant was sentenced as a third offender in 1994, one of his prior offenses was attempted murder and possession of firearm by a convicted felon.
[3] Age has been considered a mitigating factor at sentencing but only for youth with its presumption of rehabilitation of the person and of immense public expense for the taxpayer in incarcerating a person for thirty years or more. Unfortunately, an older defendant is not considered a promising candidate for rehabilitation or a long-term expense for the state.